IN RE: ANNEXATION ORDINANCE ADOPTED BY THE CITY OF JACKSONVILLE, NORTH CAROLINA, 18 APRIL 1961.

(Filed 22 November, 1961.)

**1. Municipal Corporations § 2—**

Upon review in the Superior Court of a municipal annexation ordinance enacted pursuant to parts 2 and 3 of Article 37, Subchapter VI, Chapter 160, the record of the proceedings, including the report and annexation ordinance, must show *prima facie* complete and substantial compliance with the Act as a condition precedent to the right of the municipality to annex the territory.

**2. Same—**

Where, upon review in the Superior Court of an annexation ordinance, the record of the proceedings shows *prima facie* that there has been substantial compliance with the requirements and provisions of the annexation statute, the burden is upon petitioners to show by competent evidence failure on the part of the municipality to comply with the statutory requirements as a matter of fact, or irregularity in the proceedings which materially prejudice the substantive rights of petitioners.

**3. Same—**

The record of the annexation proceedings in this case is held to show *prima facie* full compliance with the requirements of G.S. 160-453.16 as to the character of the area to be annexed and full compliance with G.S. 160-453.15 in regard to extension of police and fire protection to the area to be annexed.

**4. Same—**

Where the area proposed to be annexed by a municipality, when con-

sidered as a whole, meets the requirements of G.S. 160-453.16(b), (c), the fact that a part of the area is an undeveloped tract which does not comply with the standards set out in the statute does not require that such part be excluded from annexation.

**5. Same—**

A municipality may not limit its obligations to maintain streets in the area to be annexed by it to those streets which are improved to stipulated standards by the landowners and developers in the area, G.S. 160-453.15 (3) a. Any obligation of the landowners and developers to the city to improve the streets is a matter between them and the municipality and is irrelevant to the question of the sufficiency of the annexation ordinance to meet the requirements of the statute.

**6. Same—**

Where an annexation ordinance contains no plans for the municipality to extend water and sewer services in the area to be annexed beyond those services presently in existence in the area unless the water and sewer lines are extended by landowners and developers in the area, the ordinance fails to meet the requirements of G.S. 160-453.15(3) b.

**7. Municipal Corporations § 4—**

As a general rule, when a municipality engages in supplying water to its inhabitants, it has the duty to supply equal service to all consumers within its corporate limits.

APPEAL by petitioners from *Hooks, S.J.,* May 1961 Mixed Term of ONSLOW.

The City of Jacksonville is a municipality having a population of more than 5,000 according to the 1960 census. In March 1961 the city council began to consider, pursuant to G.S. 160-453.13 to G.S. 160-453.24, the annexation of an area containing 105 acres, adjacent to the limits of the city and lying north of that section of the city known as Northwoods. The area consists of a subdivision known as Forest Hills, a 4.5 acre tract of the Onslow County Board of Education, a 4.5 acre tract of St. Anne's Episcopal Church, and an undeveloped tract of 15.5 acres. The undeveloped tract lies between the city limits and Forest Hills and to the west of the Episcopal church property.

On 7 March 1961 the city council adopted a resolution declaring its intent to consider the annexation of this area. Notice was published announcing a public hearing to be held on 10 April 1961. A report was prepared setting forth plans for extension of services to the area. The report was approved by the city council on 21 March 1961. The public hearing was held at the time announced. On 18 April 1961 the city council adopted an ordinance purporting to annex the area referred to above.

The ordinance contains, among other things, the following (numbering ours.):

(1). A specific description of the area.

(2). For compliance with G.S. 160-453.16, entitled "Character of area to be annexed," the statement: ". . . The total area is contiguous to the City's boundaries. . . . The aggregate external boundary of the area is 11,208+ feet of which 4,950+ feet or 44.2 per cent (44.2%) coincides with the present City Boundary. . . . No part of the area is included within the boundary of another incorporated municipality. . . . (T)he total area is 105 acres and has a population determined by actual count to be 239 persons, which is in excess of two persons per acre . . . and . . . it . . . is subdivided in lots and tracts such that 85.2 per cent . . . of the total acreage consists of lots and tracts 5 acres or less in size and such that 96.8 per cent . . . of the total number of lots and tracts are one acre or less in size. . . . If taken separately, the undeveloped 15.5 acre portion could be qualified in accordance with G.S. 160-453.16(d); however, since the entire area was qualified under the two sections of G.S. 160-453.16(c), further qualification was considered to be redundant."

(3). For compliance with G.S. 160-453.15, entitled "Prerequisites to annexation; ability to serve; report and plans," the statement:

"The City proposes to extend City services to the area described herein and finance the same in the following manner:

"*Police Protection.* The Jacksonville Police Department has jurisdiction for one mile beyond the present City Limits and presently provides protection for residential areas within the City Limits on a regular patrol basis. The patrol coverage enables the department to respond to calls for aid in an average time of 5.5 minutes.

"If annexed into the City, the routine patrol through the Northwoods Area will be extended into the Forest Hills Area providing coverage to the new area on substantially the same basis as presently provided in the existing City.

"The minor additional expense in lengthening the present patrol route will be provided for in subsequent fiscal year budgets following annexation.

"*Fire Protection.* There is presently one fire station serving the City of Jacksonville. This department serves the entire City Limits Area and is available for calls on the outside of the City Limits on a payment basis. The normal average time of response to a fire call in the western section of the Northwoods Residential Area, which adjoins the Forest Hills Area, is 4 minutes. If annexed into the City, fire services on substantially the same basis would be provided in the Forest Hills Area. The existing water distribution system in the Forest

Hills Area has substantially the same flow and pressure as the North-woods Residential Area; therefore, the time of response and present water system would render substantially the same fire protection in the Forest Hills Area as now exists in the present Northwoods Area.

"The citizens of Jacksonville recently approved a bond issue which provides funds for water feeder mains through the Northwoods Area and around two sides of the Forest Hills Subdivision. The bond issue also includes necessary funds for the construction of a new fire station with necessary fire-fighting equipment, which .is to be located in the Northwoods Residential Area. At such time as additional water feeder mains and the construction of the new fire station are completed, the area within the now existing City would have increased fire protection. If annexed, Forest Hills Area would obtain the same benefits. Construction of the water feeder mains and fire station is expected to be completed within approximately 18 months."

"*Street Maintenance.* The City has sufficient equipment and personnel to provide street maintenance service in the area proposed to be annexed, on substantially the same basis and in the same manner as this service is provided within the present City Limits, immediately upon annexation.

"Full and continuous street maintenance will be afforded for all streets in the area, which have complete permanent improvements including proper and adequate storm drainage, concrete curb and gutter and street paving.

"It is the City's policy that streets and (in) new developments shall be constructed and improved by the developer and shall include proper and adequate storm drainage, concrete curb and gutter and street paving — all meeting the specifications and requirements of the City. In the sections of the area proposed for annexation where full permanent improvements have not been constructed, this policy will apply. At such time as the streets in these undeveloped portions are fully developed and improved in accordance with the above requirement, they shall be accepted for full and continuous maintenance.

"The cost of street maintenance in this area will be included in subsequent budgets following annexation with the aid of 'Powell Funds' provided by State Statutes."

". . . (W)ater and sewer services: The developed portions of the Forest Hills Subdivision is presently served by adequate water and sewer service mains. These water and sewer mains were installed by the owners of Forest Hills Property and connected to the City Lines by permissions granted by the City Council on June 4, 1957, by resolution which reads as follows: 'That Mr. Morton be allowed to tie into the water and sewer provided that he follows the past procedures.'

The past procedures and the established policy of the City of Jacksonville requires that permission is granted for the extension of water and sewer mains to new subdivisions lying beyond the City Limits providing all installations are made in strict conformance with the standards prescribed by the City and that upon annexation of the entire area or any part of the area in which such water and sewer lines are installed, the same shall become the property of the City of Jacksonville. This procedure and policy first became effective and has been continuously followed since 1951.

"The undeveloped portion of the area to be annexed will conform to past procedures of policy which requires the developer to install water and sewer mains, water and sewer lateral lines, and water meters for each individual lot and to provide concrete curb and gutter, storm drainage and street paving.

"The area proposed for annexation is now properly served with major sewer outfall facilities.

"Due to the rapid and continued growth of the City of Jacksonville and the demands placed upon its water and sewer plant facilities, the City has presently in progress plans for additional plant facilities and water feeder mains. In the development of a new source of water supply, the City's consulting engineers and the city officials decided to locate the new proposed well field and new proposed water plant in the northwestern section of the City. This being direction and area where development is most likely, the site chosen for the new source of supply and treatment facilities is located immediately adjacent to the northwest corner of the Forest Hills Subdivision property. The new source of supply will consist of four wells 10 inches in diameter. The water treatment plant will include water softening facilities and will be designed for an initial capacity of one million gallons per day and an ultimate capacity of four million gallons per day. In order to properly equalize the flow and pressure in the City's water system, the City proposes the erection of a 500,000-gallon elevated storage tank at the plant site and the installation of a 12-inch water feeder main connecting the same with the two existing elevated tanks. This 12-inch water feeder main will be installed in streets immediately adjacent to the area proposed for annexation, to wit: David Place and Henderson Drive. The water distribution system now existing in the area proposed for annexation will be tied in and connected with the feeder main at various points in these two streets; thereby providing increased flow and pressure in the Forest Hills Area. It is proposed that construction on these hereinbefore described improvements to the water system will begin in the early summer of 1961. These im-

provements must be installed in any event regardless of the final decision of the annexation of the Forest Hills Area.

"Funds for the proposed improvements to the water system will be provided by a bond issue, which was approved in a referendum on February 7, 1961."

Only those parts of the ordinance which are material and pertinent on this appeal are copied here. The quoted portions of the ordinance are in strict accord with the report. A map was attached to the report and made a part of the ordinance.

Within 30 days following the adoption of the annexation ordinance 98 persons and two corporations filed a verified petition in the superior court of Onslow County appealing from and seeking review of the ordinance. The exceptions taken to the ordinance, insofar as is necessary for determination of the questions raised, are discussed in the opinion.

The cause came on for hearing before Hooks, S.J. Evidence was offered by petitioners and respondents. Members of the City Council, the City Manager, City Engineer, Chief of Police, Fire Chief and many others gave testimony.

Over the objection of petitioners, there was testimony that "It is the City's policy that streets in new developments shall be constructed and improved by the developer and shall include proper and adequate storm drainage, concrete curb and gutter and street paving — all meeting the specifications and requirements of the City," and further that the "policy of the City of Jacksonville requires that permission is granted for the extension of water and sewer mains to new subdivisions lying beyond the city limits providing all installations are made in strict conformance with the standards prescribed by the City and that upon annexation of the entire area or any part of the area in which such water and sewer lines are installed, the same shall become the property of the City of Jacksonville."

There was documentary evidence, including ordinances and resolutions appearing on the minutes of the City Council, and letters, showing that the City of Jacksonville annexed three areas, the Cates-Cavenaugh property, Northwoods, and Oak Grove, from 1951 to 1960. In each of these the developers requested annexation and agreed to install water and sewer lines and improve streets without expense to the City, and the developer was required to comply before services were extended or the area was annexed.

The following appears in Minute Book 7, page 88, under date of 4 June 1957:

"Mr. Cecil Morton appeared before the Council in regards

to getting permission to tie into the City Water for his property on Henderson Drive just outside the City Limits.

"Motion by A. D. Guy, seconded by Jack Koonce, that Mr. Morton be allowed to tie into the water and sewer providing that he follows the past procedures.

Voting Ayes      All

Opposed      None."

There was testimony that Mr. Cecil Morton was one of the developers of Forest Hills. Henderson Drive is in the south edge of Forest Hills.

The following excerpt from minutes of the City Council was admitted in evidence:

"REPORT ON PROPOSED ANNEXATION
ELIZABETH LAKE AREAS.
PUBLIC HEARING TUESDAY, FEBRUARY 23
1960      CITY HALL      8 P. M.
CITY OF JACKSONVILLE, NORTH CAROLINA

The policy of the City now is to extend water and sewer lines 100 feet to any house without these services, with the property owner being responsible for additional cost in distance. The same policy would exist in the proposed annexed area with respect to all of the businesses and residences now in this proposed area. It would be the responsibility of any builder in an undeveloped area or subdivision to extend water and sewer thru their subdivision after it has been made available to their property line by the City. Work should be started or contracts let and construction begun on such water and sewer lines within 6 months following the effective date of annexation."

The City Manager testified that the citizens of Jacksonville approved a bond issue of $1,400,000.00 for improving and enlarging water and sewer facilities, none of the money has been expended and these funds will be available for the Forest Hills area if the City Council sees fit; that the City is proposing the installation of a 12-inch feeder main along Henderson Drive (in Forest Hills and near the 15.5 acre undeveloped tract), and the developed portions of Forest Hills Subdivision is presently served by adequate water and sewer mains.

It appears from the testimony of a number of witnesses that there are no houses on the 15.5 acre tract, and it contains no water or sewer lines. There is no recorded map showing any streets or avenues in this tract. It was also testified that no major outfall sewer lines are required for this tract, that it could be served with water and sewer by connecting with the Northwoods area.

There was further testimony tending to show that there are streets without curb and gutter and unpaved streets both within the City of Jacksonville and in Forest Hills, and that the City maintains such streets within its present limits.

The Chief of Police and Fire Chief testified as to the equipment and personnel of their departments, and plans and means for extending services to the annexed area.

The court made findings of fact and conclusions of law, in part as follows:

"2. That included in the property annexed is an area of approximately 16 acres, which is owned by some of the petitioners, which area is contiguous to the present City Limits and is undeveloped in that it contains no improvements such as paved streets, curb and gutter, or water and sewer facilities."

"7. That the evidence was sufficient to show plans of the City of Jacksonville for extending to the area to be annexed the same police protection as is now being furnished by the City on substantially the same basis and in the same manner as such service is provided within the rest of the municipality prior to annexation; and that the report setting forth such plans sufficiently shows that such service will be furnished and can be furnished on the date of annexation.

"8. That the evidence was sufficient to show plans of the City of Jacksonville for extending to the area to be annexed the same fire protection as is now being furnished by the City on substantially the same basis and in the same manner as such service is provided within the rest of the municipality prior to annexation; and that the report setting forth such plans sufficiently shows that such service will be furnished and can be furnished on the date of annexation.

"9. That there is no evidence tending to show that the area to be annexed will not be provided, or does not already have provided, adequate storm drains, adequate sewer facilities; that the policy of the City of Jacksonville in this respect is sufficiently established and set forth in this annexation report and substantiated by official minutes and documents of the City introduced in evidence by the petitioners for purpose of attack; that the said report contains a sufficient statement of the City's plans and timetable to show that the area to be annexed will be furnished with the major municipal services performed within the City at the time of annexation or at the time the City is required to furnish said services in accordance with its established policy.

"10. That there is no evidence tending to show that the newly annexed area will not be furnished with, or does not now have adequate and sufficient street improvements and street maintenance in accord-

ance with the established policy of the City and on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation."

"13. . . . . . .

"(a). That the so-called 16-acre undeveloped tract lies between the present municipal boundary and an area developed for urban purposes so that the area developed for urban purposes is not adjacent to the municipal boundary; that said undeveloped area is adjacent, on at least sixty (60%) per cent of its external boundary, to any combination of the municipal boundary and the boundary of an area developed for urban purposes as defined in G.S. 160-453.16(c). . . .

"The Court further finds as a fact with respect to said 16-acre tract that no major sewer outfall lines will be required to be installed and that adequate water and sewer facilities can be provided by the City by proper connections with existing City sewer and water lines and with such lines as are planned in the manner set forth in the annexation report, and that adequate financial provision has been made by the City as evidenced by the approval of the voters of the City of Jacksonville in a bond referendum held on February 7, 1961, in the amount of One Million Three Hundred and Seventy-eight Thousand ($1,378,000.00) Dollars, which amount included eighty thousand ($80,000.00) Dollars for a fire station and equipment to be erected in that portion of the City of Jacksonville immediately adjoining and to the south of the area being annexed.

"The Court further finds as a fact in this connection that the City of Jacksonville had, at the time of the passage of the annexation ordinance, an established policy requiring that streets in new developments must be constructed by the developers and must include proper and adequate storm drains, concrete curb and gutters and street paving, all meeting the specifications and requirements of the City; and further, that sewer and water facilities must be installed by the developers according to the specifications and requirements of the City. . . .

"(b) The Court finds that the report setting forth the plans for providing adequate storm drains, concrete curb and gutter, street paving, water mains and sewer mains to the annexed area is adequate to provide such facilities on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation and that the report sets forth the City's plans for the financing of all such improvements on a timetable which meets the requirements of the law."

"(e). The Court finds that the petitioners have failed to show that the statutory procedure was not followed, as required by G.S. 160-

453.17, and other sections of the annexation statute, and the Court finds that said procedure was complied with.

"(f). The Court finds that the petitioners have failed to show that the provisions of G.S. 160-453.15 were not met, and the Court finds that such provisions were met.

"(g). The Court finds that the petitioners have failed to show material injury to themselves or to their property as a result of the annexation of the area described in the annexation ordinance."

Upon the findings of fact and conclusions of law the Court entered judgment affirming the annexation ordinance without change.

Petitioners appealed and assigned errors.

*Ellis, Godwin & Hooper and Jones, Reed & Griffin for petitioners, appellants.*

*Venters & Dotson and Ward & Tucker for respondents, appellees.*

Moore, J. In annexation proceedings under parts 2 and 3 of Article 36, Subchapter VI, Chapter 160 of the General Statutes of North Carolina (hereinafter referred to as the "Act"), the record of the proceedings, including the report and annexation ordinance, must show *prima facie* complete and substantial compliance with the Act, as a condition precedent to the right of the municipality to annex. Where an appeal is taken from an annexation ordinance and a petition has been filed requesting review of the annexation proceedings, and the proceedings show *prima facie* that there has been substantial compliance with the requirements and provisions of the Act, the burden is upon petitioners to show by competent evidence failure on the part of the municipality to comply with the statutory requirements as a matter of fact, or irregularity in proceedings which materially prejudice the substantive rights of petitioners. *Huntley V. Potter, ante,* 619.

Our examination of the annexation proceedings in this case compels the conclusion that the report and ordinance show *prima facie* full compliance with the requirements of G.S. 160-453.16 as to the "character of the area to be annexed," and full compliance with G.S. 160-453.15 in relation to plans for extension of police protection and fire protection to the area to be annexed on "substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." The court below in substance made such finding and correctly so. Petitioners failed to carry the burden of showing otherwise, with respect to these matters.

Petitioners contend that the 15.5 acre undeveloped tract (referred to in the judgment as 16-acre tract) is not property of the character

which may be annexed under the Act, does not comply with the standards set out in G.S. 160-453.16, and should have been excluded from the area to be annexed. This contention is untenable. It is true that there are no buildings on the 15.5 acre tract, no persons reside thereon, and it has not been subdivided and contains no improved streets or utilities. But when considered with the remainder of the area to be annexed, the area as a whole complies with the requirements of G.S. 160-453.16(b) and (c). Petitioners have not shown otherwise. This is sufficient to qualify this tract for inclusion in the annexation. Furthermore, the 15.5 acre tract qualifies for annexation under the provisions of G.S. 160-453.16(d) which declares: "In addition to areas developed for urban purposes, a governing board may include in the area to be annexed any area which does not meet the requirements of subsection (c) if such area . . . is adjacent, on at least sixty per cent (60%) of its external boundary, to any combination of the municipal boundary and the boundary of an area or areas developed for urban purposes as defined in subsection (c)." A casual examination of the annexation map shows that more than 60% of the external boundary of the 15.5 acre tract is adjacent to the city limits and the Forest Hills Development. The court found this to be a fact, though such finding was unnecessary since the area as a whole qualified under G.S. 160-453.16(c). Where an area to be annexed, when considered as a whole, meets the requirements of G.S. 160-453.16(b) and (c), a portion of the area may not, as a matter of right, be excluded from annexation merely because it, taken alone, does not meet these requirements. Petitioners' argument to the contrary is based on the following language in G.S. 160-453.16(a): "A municipal governing board may extend the municipal corporate limits to include any area . . . *every part of which* meets the requirements of either subsection (c) or subsection (d)." (Emphasis added). When considered with the other provisions of the section it is clear that the construction placed thereon by petitioners is contrary to the intent of the Legislature. A vacant lot in a subdivision does not comply with subsection (c), but the Legislature did not intend that all vacant lots in an otherwise qualified area be excluded from annexation. The language simply means that where a developed tract and an undeveloped tract are included in an area to be annexed, and the developed tract complies with subsection (c), but when the undeveloped tract is added the area as a whole does not so comply, then the undeveloped tract must be excluded unless it complies with one of the requirements of subsection (d).

In the report of plans and the annexation ordinance the plan for street maintenance is:

"Full and continuous street maintenance will be afforded for all streets in the area, which have complete permanent improvements including proper and adequate storm drainage, concrete curb and gutter and street paving.

"It is the City's policy that streets and new developments shall be constructed and improved by the developer and shall include proper and adequate storm drainage, concrete curb and gutter and street paving — all meeting the specifications and requirements of the City. In the sections of the area proposed for annexation where full permanent improvements have not been constructed, this policy will apply. At such time as the streets in these undeveloped portions are fully developed and improved in accordance with the above requirement, they shall be accepted for full and continuous maintenance."

The uncontradicted evidence is that there are unpaved streets and streets without curb and gutter within the area to be annexed and within the present limits of the city, and those within the city limits are maintained by the city. Yet the plan for extension of service states in effect that the city will maintain in the area to be annexed only such streets as are paved and have adequate storm drainage and concrete curb and gutter. It is stated that land owners and developers must put the streets in the annexation area in this condition before they will be accepted for "full and continuous maintenance." Whether the land owners and developers in the area in question are under a contractual duty to the city to make such improvements after annexation, whether the city has the legal right to impose such duty upon them after an annexation, peremptory and involuntary as to the land owners, or whether an *ex parte* statement of policy on the part of the city, if indeed there is such statement of policy, is binding on such owners, are questions beside the point and may not be determined in this case. Of course an established policy of the city may be considered in determining whether or not it plans to extend street maintenance service to the new area "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality," but there is no evidence that the city has a policy not to maintain unpaved streets and streets without curb and gutter, even in newly annexed areas; the evidence is to the contrary. Even if the property owners and developers in the area to be annexed are under duty to the city to pave all streets and provide storm sewers and curb and gutter, the city is in no position to rely on this obligation in the annexation proceeding and thereby shift to others the duty which the Act imposes on the city as a condition

precedent to annexation. So far as the annexation proceeding is concerned, the primary duty of street maintenance in the area in question, after annexation, is upon the city, and it must in good faith make plans to maintain the streets, whether paved or unpaved, "on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation." G.S. 160-453.15(3)a. If there are others who have an obligation to relieve the city of the duty of maintaining streets which are not improved to the indicated level, it is a matter strictly between such other parties and the city, and the nature, extent and validity of the obligation may not be litigated in this cause. The court below should have found that the plans for street maintenance do not comply with the requirements of G.S. 160-453.15.

The plans for water and sewer extension to the area to be annexed present a very similar problem. The plans for water and sewer set out in considerable detail proposed improvements in lines and mains and additional plant facilities and water feeder mains for the city as well as the area to be annexed, construction to begin within a year and to be financed from the proceeds of a bond issue heretofore authorized by vote of the citizens of Jacksonville. In this phase of the matter the plans are entirely adequate. But the over-all plans for water and sewer extension to the new area state that the developed portion is presently served by adequate water and sewer mains connected to city lines, that under an established policy of the city these facilities will become the property of the city when the area is annexed, and that in the undeveloped portions of the area city policy requires land owners and developers to install water and sewer mains, lateral lines and water meters for each individual lot. There are no plans for the city to extend water and sewer service beyond that presently in existence, unless lines are extended by land owners and developers. The question as to whether or not the city will own the water and sewer installations upon annexation does not arise here; it will only arise if and when the city appropriates the installations. *Styers v. Gastonia,* 252 N.C. 572, 114 S.E. 2d 348. The instant proceeding is concerned with extension of services, not ownership of facilities. Furthermore, the question as to whether or not the city may impose upon the owners of undeveloped portions of the area, after annexation and after city lines have been connected to facilities in the area, the obligation to install water and sewer mains, lateral lines and meters, has no place in this litigation.

The evidence as to city policy is that areas outside the city desiring to connect with city mains have been required to install lines and facilities in keeping with city standards, before connections were made

and before those areas were annexed and brought within the city limits, all without any expense to the city. In these instances the developers requested annexation. In a public hearing relative to the annexation of an "Elizabeth Lake" area, it was stated:

> "It would be the responsibility of any builder in an undeveloped area or subdivision to extend water and sewer thru their subdivision after it has been made available to their property line by the City. Work should be started or contracts let and construction begun on such water and sewer lines within 6 months following the effective date of annexation."

In this area the developers desired annexation and apparently agreed to the terms. In the instant case the annexation is peremptory and, as to the petitioners, adverse.

There is evidence that the 15.5 acre undeveloped tract may be served by making connections with facilities in the Northwoods development, but there is no plan for such service. In short, there is no plan to extend services to any parts of the area to be annexed other than those portions which have existing installations, and such additional portions in which land owners and developers shall install water and sewer mains, lateral lines and meters. Thus the plans for extension of water and sewer services are purely conditional. The Act requires that the services be provided on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. When a municipality engages in supplying water to its inhabitants, it owes the duty of equal service to consumers within its corporate limits, as a general rule. *Fulghum v. Selma,* 238 N.C. 100, 76 S.E. 2d 368. The city must furnish major municipal services to areas annexed as provided by the Act. The performance of this duty may not be made to depend upon a doubtful contingency, and may not be delegated to others by the city so as to relieve the city of the duty. If other parties are obligated to the city to perform such duty, the city must enforce the obligation directly against such parties and may not be otherwise relieved of its primary duty to the area which it seeks to make a part of the city for all other purposes. Plans for extension of services may, of course, take into consideration all circumstances and provide only for services if and when needed. Besides, the cost of water and sewer extensions may be assessed upon the lots or parcels of land abutting directly on lateral mains of water and sewer systems. G.S. 160-241 to G.S. 160-248, and G.S. 160-255. The court should have found that the plans for water and sewer extensions are not in compliance with the Act.

The requirements of the Act that plans for extension to the area

to be annexed of all major municipal services performed within the municipality at the time of annexation is a condition precedent to annexation. *Huntley v. Potter, ante,* 619; *In Re Annextion Ordinance,* 253 N.C. 637, 647, 117 S.E. 2d 795.

Except as above indicated, the record shows full and substantial compliance with the Act.

This cause is remanded with direction that the Superior Court of Onslow County enter an order remanding the proceedings to the City Council of Jacksonville for amendment of plans as to street maintenance and water and sewer extension so that these plans will comply with the requirements of G.S. 160-453.15. See G.S. 160-452.18 (g) (3).

Error and remanded.