IN THE MATTER OF CITY OF DURHAM ANNEXATION ORDINANCE NUMBERED 5991 FOR AREA A AND IN THE MATTER OF CITY OF DURHAM ANNEXATION ORDINANCE NO. 5992 FOR AREA B

No. 8314SC891

(Filed 19 June 1984)

**1. Municipal Corporations § 2— annexation statutes—general laws not required**

Statutes setting out the involuntary annexation procedure applicable to cities of 5,000 or more did not violate Art. XIV, § 3 of the N. C. Constitution because certain counties were exempted therefrom since laws relating to annexation are not required to be general or uniformly applicable laws. Art. II, § 24 of the N. C. Constitution; G.S. 160A-56.

**2. Rules of Civil Procedure § 52— non-jury trial—sufficiency of court's findings**

The trial court's findings of fact in a proceeding to review two annexation ordinances constituted ultimate facts and therefore complied with G.S. 1A-1, Rule 52(a)(1).

**3. Municipal Corporations § 2.3— annexation—no metes and bounds description in original ordinance**

Annexation ordinances were not invalid because metes and bounds descriptions were not included with the ordinances when they were originally adopted by the City Council but were added to the ordinances before they were later ratified by the Council where the descriptions were placed before the Council and the public as part of the annexation report, and the area and proximity maps and the landmark descriptions were before the City Council and public as part of the notices of hearing.

**4. Municipal Corporations § 2.3— annexation—sewer services for new areas**

A city's planned sewer services for an annexed area complied with G.S. 160A-47(3) where the city indicated in its annexation report that contracts for the extension of major sewer outfall lines in the area would be let and construction would begin within twelve months after the effective date of annexation, it not being necessary for the city actually to provide sewer services within the twelve-month period.

**5. Municipal Corporations § 2.3— annexation—police protection for new areas**

A city's planned police protection for newly annexed areas met the requirements of G.S. 160A-47(3), although such plans did not include any provision for hiring additional detective or juvenile personnel, where the annexation report indicated that three patrol units would be added to the police department in order to provide sufficient law enforcement services in one area and that additional resources were not needed to provide adequate police services to the second area.

6. **Municipal Corporations § 2.3— annexation—fire protection services for new areas**

A city met the requirements of G.S. 160A-47(3)a for providing fire protection services to newly annexed areas where the annexation report indicated that tanker service would be available in some sections to provide water until water mains and fire hydrants are installed. Furthermore, G.S. 160A-47(3)a was not violated because response times of fires will be longer in the newly annexed areas than in the rest of the city.

7. **Municipal Corporations § 2.3— annexation—use of natural topographic features for boundaries**

Petitioners failed to carry their burden of showing that annexation ordinances were invalid on the ground that the city failed to utilize natural topographic features in determining the boundaries of the annexed areas as required by G.S. 160A-48(e) where they failed to show that the boundaries could have been drawn along the topographic features which they proposed.

APPEAL by petitioners from *McLelland, Judge.* Judgment entered 15 March 1983 in Superior Court, DURHAM County. Heard in the Court of Appeals 10 May 1984.

On 7 October 1982 petitioners filed two petitions for review wherein they prayed that two ordinances purporting to annex petitioners' land to the City of Durham be declared null and void. In the alternative petitioners prayed that Article 4A, Chapter 160A *et seq.* be declared unconstitutional, or that the ordinances be rescinded or amended. The City of Durham responded that the annexation ordinances were duly enacted. The City denied petitioners' allegations of unconstitutionality.

After lengthy discovery, the matter was heard before Judge McLelland without a jury. At the close of petitioners' evidence, the City moved for dismissal pursuant to Rule 41(b) of the Rules of Civil Procedure. Judge McLelland heard arguments of the parties and granted the City's motion to dismiss. In his judgment, he decreed that the two annexation ordinances were valid and enforceable. From this judgment in the City's favor, petitioners appeal.

*Randall, Yaeger, Woodson, Jervis & Stout, by John C. Randall, for petitioner appellants.*

*W. I. Thornton, Jr. and Brenda M. Foreman, for respondent appellee.*

ARNOLD, Judge.

Petitioners have assigned error to the following findings of fact and conclusions of law in Judge McLelland's judgment:

### FINDINGS OF FACT

1. The statutory procedure for annexation contained in North Carolina General Statutes Chapter 160A, Article 4A, part 3 consisting of Sections 160A-45 through 160A-56 and primarily contained in Section 160A-49 was followed by the Respondent, City of Durham, substantially and without any irregularity which misled or substantially prejudiced the interests of any of the petitioners.

2. The record filed by Respondent pursuant to G.S. 160A-50 demonstrates that the provisions of G.S. 160A-47 were met in that: i) The City of Durham prepared and made available for public review at least 14 days prior to the public hearing a report setting forth the City's plans to provide police and fire protection, garbage collection, street maintenance and other services to the people in the areas to be annexed together with maps of the City and adjacent areas showing the present and proposed boundaries of the City and, as to the areas to be annexed, showing water and sewer mains, proposed extensions of mains and outfalls, general land use patterns in the areas, and a statement showing that the areas to be annexed are of the character subject to annexation as specified in G.S. 160A-48, and ii) the plans for extending fire protection and other municipal services, including police protection, to the areas to be annexed on substantially the same basis and in substantially the same manner on the date of annexation, June 30, 1983, as provided to the rest of the city before that date are adequate and sufficient.

3. The provisions of G.S. 160A-48 have been met in that the areas annexed under the ordinances are of the character specified in the statutory sections specifically set forth in the annexation report filed with this court for its review pursuant to G.S. 160A-50 and in that the boundaries of the annexed areas follow natural topographic features where practical.

. . . .

CONCLUSIONS OF LAW

1. The North Carolina General Statutes Chapter 160A, Article 4A, part 3 establishing the annexation procedure applicable to cities of 5,000 or more population is valid and does not violate any constitutional provision of the State of North Carolina or of the United States.

2. The annexation ordinances No. 5991 and No. 5992 adopted on September 7, 1982 as certified to the Court for review are valid as of that date.

[1] We first examine petitioners' argument that the trial court erred in concluding that the statutes setting out the annexation procedure applicable to cities of 5,000 or more are unconstitutional. In their petitions for review, petitioners alleged that the involuntary annexation provisions of Part 3, Article 4A, Chapter 160A were unconstitutional because they violated Article II, Section 24(1)(h) and Article XIV, Section 3 of the North Carolina Constitution. Petitioners further alleged that the statutes violated their constitutional rights to due process and equal protection.

On appeal petitioners argue only that the annexation statutes at issue violate Article XIV, Section 3. *General laws defined.* A close reading of Section 3 and other pertinent sections of the Constitution leads us to the conclusion that Article XIV, Section 3 does not apply to the annexation laws.

Part 3 of Chapter 160A of the North Carolina General Statutes deals with the annexation by cities of 5,000 or more people of areas adjacent or contiguous to existing municipal boundaries. The statutes therein provide the authority to annex (G.S. 160A-46), set forth the prerequisites to annexation (G.S. 160A-47), establish the characters of areas to be annexed (G.S. 160A-48), establish the procedure for annexation (G.S. 160A-49) and provide the basis upon which property owners in an annexed area may seek judicial review of an annexation ordinance (G.S. 160A-50).

At the time the City of Durham initiated annexation proceedings pursuant to Part 3, G.S. 160A-56 expressly exempted the counties of Columbus, Halifax, Pender and Perquimans from Part 3. G.S. 160A-56 has since been repealed, effective 29 June 1983, by the 1983 N.C. Sess. Laws c. 636, s. 27. Also at the time of the annexation proceedings on appeal, Cumberland County was ex-

empt from Part 3 pursuant to a local act adopted by the General Assembly in 1969. This act provided that voters residing in areas to be annexed in Cumberland County pursuant to either Part 2, *Annexation by Cities of Less Than 5,000*, or Part 3 of Chapter 160A may file a petition in opposition and effectively block annexation. *See Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980).

Petitioners argue that by exempting certain counties from Part 3 of the annexation statutes, such as Halifax and Cumberland which contain cities of over 5,000 people, the General Assembly rendered the general laws regarding annexation nonuniform and thus violated Article XIV, Section 3 of the North Carolina Constitution.

Article XIV, Section 3 defines general laws as follows:

Whenever the General Assembly is directed or authorized by this Constitution to enact general laws, or general laws uniformly applicable throughout the State, or general laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, no special or local act shall be enacted concerning the subject matter directed or authorized to be accomplished by general or uniformly applicable laws, *and every amendment or repeal of any law relating to such subject matter shall also be general and uniform in its effect throughout the State.* [Emphasis supplied by petitioners.] General laws may be enacted for classes defined by population or other criteria. General laws uniformly applicable throughout the State shall be made applicable without classification or exception in every unit of local government of like kind, such as every county, or every city and town, but need not be made applicable in every unit of local government in the State. General laws uniformly applicable in every county, city and town, and other unit of local government, or in every local court district, shall be made applicable without classification or exception in every unit of local government, or in every local court district, as the case may be. The General Assembly may at any time repeal any special, local, or private act. (1969, c. 1200, s. 1.)

Petitioners have obviously overlooked the language in the first sentence of Section 3, which prohibits only the enactment of special or local laws concerning subject matters directed or authorized by the Constitution "to be accomplished by general or uniformly applicable laws."

Examples of sections of the North Carolina Constitution governed by Article XIV, Section 3 are those involving taxation and the retirement of judges and justices. Article V, Section 2. *State and local taxation* provides in paragraph (2) that "[n]o class of property shall be taxed except by *uniform rule*, and every classification shall be made by *general law uniformly applicable* in every county, city and town, and other unit of local government" (emphasis supplied). In paragraph (3) our Constitution mandates that every exemption from taxation "shall be made by *general law uniformly applicable* in every county, city and town, and other unit of local government." (Emphasis supplied.) In Article IV, Section 8, the Constitution requires that the General Assembly provide for the retirement of justices and judges by *general law*.

Article II, Section 24 sets out fourteen different subjects on which the General Assembly is expressly prohibited from enacting local, private or special acts or resolutions. Only general laws can be enacted to regulate these subjects. *See* Ferrell, *Local Legislation in the North Carolina General Assembly*, 45 N.C. L. Rev. 340 (1966-1967) for a comprehensive history of local legislation in the General Assembly and the courts. One of the prohibited subjects in Article II, Section 24 is "Erecting new townships, or changing township lines, or establishing or changing the lines of school districts." Article II, Section 24(1)(h). At first glance it appears that G.S. 160A-56, exempting certain counties from Part 3 of the annexation statutes, would constitute a local act in violation of subsection (h). The annexation statutes, however, do not themselves erect new townships or change township lines. They merely authorize various townships to change their lines by various procedures.

The North Carolina Supreme Court applied this same rationale in *In re Assessments*, 243 N.C. 494, 91 S.E. 2d 171 (1956). There the petitioners argued that an act applicable only to the City of Durham which authorized the municipality to make street

In re Durham Annexation Ordinance

improvements and to assess the cost against abutting property owners without a petition, was a violation of Article II, Section 29 (now Article II, Section 24(1)(c)). This subsection precludes the General Assembly from "[a]uthorizing the laying out, opening, altering, maintaining, or discontinuing of highways, streets, or alleys." The Court found no constitutional violation because the local act was merely declaratory of the powers given the City of Durham under the general law and did not authorize the laying out, altering or maintaining a particular street or streets.

The annexation statutes set out in G.S. 160A *et seq.* are clearly consistent with the authority granted to the General Assembly by our Constitution in Article VII, Section 1.

> The General Assembly shall provide for the organization and government and the fixing of boundaries of counties, cities and towns, and other governmental subdivisions, and, except as otherwise prohibited by this Constitution, may give such powers and duties to counties, cities and towns, and other governmental subdivisions, as it may deem advisable.

There is no express language in Section 1 which directs the General Assembly to provide for the fixing of boundaries of counties, cities and towns by general laws.

The argument that general laws are required to enact annexation ordinances regarding cities of 5,000 or more persons was dispelled in *In re Annexation Ordinances*, 253 N.C. 637, 117 S.E. 2d 795 (1961). The Court found no merit to petitioners' argument that Part 3 of the annexation statutes was invalid, because twelve counties were excluded from its provisions. *See* 1959 N.C. Sess. Laws c. 1009, s. 12. Petitioners had argued "that such exclusion prevents the Act (Part 3) from being general in character within the purview of Article VIII, Section 4 of our Constitution." *Id.* at 650, 117 S.E. 2d at 804.

Article VIII, Section 4 provided: "It shall be the duty of the Legislature to provide by general laws for the organization of cities, towns, and incorporated villages, and to restrict their power of taxation, assessment, borrowing money, contracting debts, and loaning them credit. . . ." The Court emphasized that it has uniformly held that the requirement in Article VIII, Section 1, *Corporate charters,* with respect to general laws, refers only to

private or business corporations. *See Kornegay v. City of Golds-boro*, 180 N.C. 441, 105 S.E. 187 (1920). The Court, citing *Holton v. Town of Mocksville*, 189 N.C. 144, 149, 126 S.E. 326, 328 (1925), stated:

> Section 4 of Article VIII of the Constitution imposes upon the General Assembly the duty to provide by general laws for the improvement of cities, towns and incorporated villages. It does not, however, forbid altering or amending charters of cities, towns and incorporated villages or conferring upon municipal corporations *additional powers* or restricting the powers theretofore vested in them. . . .

*In re Ordinances, supra* at 650-651, 117 S.E. 2d at 805.

The General Assembly possesses the authority under the North Carolina Constitution to create or extend a municipality and to give such powers to a municipality "as it may deem ad-visable." Article VII, Section 1. The only restriction on these powers is that they not be prohibited by our Constitution. The foregoing cases, along with the language of our Constitution, show that Article VII, Section 1 is not a power of the General Assembly which must be carried out or enacted by general laws as defined in Article XIV, Section 3.

Although petitioners have not argued an equal protection violation in their brief, we note that this Court, citing *Texfi Industries v. City of Fayetteville*, 301 N.C. 1, 269 S.E. 2d 142 (1980), recently held that the trial court did not err in failing to conclude that Part 3 of Chapter 160A denied petitioners equal protection of the law. *In re Annexation Ordinance*, 62 N.C. App. 588, 303 S.E. 2d 380 (1983). Petitioners had unsuccessfully argued in their brief that the exclusion of some counties by the provisions of G.S. 160A-56, thereby making the residents therein subject to annexa-tion only by referendum or petition, had no reasonable basis and denied equal protection to residents of non-excluded counties. We add that the North Carolina Supreme Court subsequently denied petitioners' request for discretionary review and allowed the City's motion to dismiss the appeal for lack of a substantial con-stitutional question. 309 N.C. 820, 310 S.E. 2d 351 (1983).

Having determined that the statutes governing the annexa-tion of petitioners' lands to the City of Durham are constitutional, we turn to petitioners' remaining assignments of error.

[2]  Petitioners argue that the findings of fact in the judgment of dismissal do not comply with the requirements of Rule 52(a)(1). This rule of civil procedure provides that in actions tried without a jury, "the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment." Our courts have indicated, however, that Rule 52(a) requires only ultimate facts. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975).

> Ultimate facts are those found in that vaguely defined area lying between evidential facts on one side and conclusions of law on the other. (Citation omitted.) In consequence, the line of demarcation between ultimate facts and legal conclusions is not easily drawn. (Citations omitted.) An ultimate fact is the final resulting effect which is reached by processes of logical reasoning from the evidentiary facts. (Citations omitted.) Whether a statement is an ultimate fact or a conclusion of law depends upon whether it is reached by natural reasoning or by an application of fixed rules of law. (Citations omitted.)

*Quick v. Quick*, 305 N.C. 446, 451-452, 290 S.E. 2d 653, 657-658 (1982), citing *Woodard v. Mordecai*, 234 N.C. at 472, 67 S.E. 2d at 645 (1951). We believe that the trial court's findings of fact constitute ultimate facts and therefore comply with Rule 52(a)(1).

We also find no merit to petitioners' assignment of error that the findings of fact are not supported by any evidence. G.S. 160A-50 allows limited judicial review of annexation ordinances, where a petitioner believes he "will suffer material injury by reason of the failure of the municipal governing board to comply with the (statutory) procedure . . . or to meet the (statutory) requirements set forth in G.S. 160A-48 as they apply to his property." "Upon review, petitioner must carry the burden of showing both non-compliance with statutory requirements and procedure and material injury flowing from such non-compliance." *McKenzie v. City of High Point*, 61 N.C. App. 393, 400, 301 S.E. 2d 129, 131, *disc. rev. denied*, 308 N.C. 544, 302 S.E. 2d 885 (1983). The record on appeal indicates that petitioners have not overcome this burden and supports the trial court's findings of fact.

[3]  Under this assignment of error, regarding the insufficiency of the evidence to support the findings of fact, petitioners first

argue that the annexation ordinances were improperly passed because the metes and bounds descriptions were prepared and added to the ordinances after they were purportedly adopted on 7 September 1982. The descriptions were added to the ordinances when they were later reviewed and ratified by City Council on 18 October 1982.

G.S. 160A-49(e)(1) requires that an ordinance passed by the governing board of a municipality describe the external boundaries of the annexed area by metes and bounds. Petitioners have not shown that they were materially prejudiced by this irregularity. Even though a metes and bounds description was not attached to each proposed ordinance on 7 September 1982, the descriptions were placed before the City Council and the public as part of the Annexation Report. In addition, the area and proximity maps of the annexed areas and the landmark description were before the City Council and public as part of the notices of hearing.

Petitioners next argue that the annexation ordinances are invalid for failure to provide for timely and substantially equal delivery of sewer service and fire and police protection. G.S. 160A-47(3)a requires that the City's annexation plans shall:

> Provide for extending police protection, fire protection, garbage collection and street maintenance services to the area to be annexed on the date of annexation on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines.

The evidence before this Court indicates that the City complied with this statute.

SEWER SERVICES

[4] Petitioners argue that the City's planned sewer services for Area A do not comply with G.S. 160A-47(3), because such services will not be provided until March, 1985. The effective date of annexation is 30 June 1983. They contend that G.S. 160A-49(h) gives

---

---

a municipality twelve months at the most to implement a plan for extending services to an annexed area.

We agree with the City that petitioners have applied an incorrect timetable. In its Annexation Report, the City indicated that contracts for the extension of major sewer outfall lines in Area A would be let and construction would begin within a year of 30 June 1983. The applicable timetable is therefore set out in G.S. 160A-47(3)c. This statute directs that plans for the extension of sewer outfall lines "shall call for contracts to be let and construction to begin within 12 months following the effective date of annexation."

## POLICE PROTECTION

[5] Petitioners argue that the planned police protection for Areas A and B does not meet the requirements of G.S. 160A-47 (3)c, because the Annexation Report does not include any provision for the hiring of additional detective or juvenile personnel. The Annexation Report does indicate that three patrol units will be added to the Public Safety Department in order to provide sufficient law enforcement services in Area A. As to Area B, the Annexation Report reads: "No additional personnel, equipment, or operating expenses will be necessary to provide law enforcement . . . services to Area B because the City can provide Area B with law enforcement . . . services with currently budgeted resources." Petitioners have shown no violation of G.S. 160A-47(3) or any material injury flowing from this alleged violation. *See In re Annexation Ordinance*, 255 N.C. 633, 122 S.E. 2d 690 (1961) (The Supreme Court held that the requirements of the applicable statute were met where the plans for police protection in the annexed area only called for the extension of jurisdictional boundaries and lengthened patrol routes.) and *Williams v. Town of Grifton*, 19 N.C. App. 462, 199 S.E. 2d 288 (1973), *modified and affirmed*, 22 N.C. App. 611, 207 S.E. 2d 275 (1974) (The extension of patrol routes into the annexed area constituted protection on substantially the same basis as such protection in the remainder of the Town, although no additional policemen were provided.).

## FIRE PROTECTION

[6] Petitioners argue that they will not receive fire protection services equal to the services received by a majority of the pre-

annexation citizens. Petitioners, however, have ignored that portion of the Annexation Report which indicates that in some sections of Areas A and B tanker service will be required to provide adequate fire flow until water mains and fire hydrants are installed. G.S. 160A-47(3)a only requires "reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines."

Petitioners further argue that G.S. 160A-47(3)a has been violated, because response times to fires will be longer in the newly annexed areas than in the rest of the City. A similar argument was rejected by this Court in a case also involving the annexation of land to the City of Durham. *In the Matter of City of Durham Annexation Ordinance No. 5791*, 66 N.C. App. 472, 311 S.E. 2d 898, *disc. rev. denied* 30 April 1984.

The foregoing evidence of planned services in the areas to be annexed supports the trial court's finding of fact that such services meet the requirements of G.S. 160A-47(3)a.

[7] Finally petitioners argue that the annexation ordinances are invalid, because the City failed to utilize natural topographic features in determining the boundaries of the annexed areas as required by G.S. 160A-48(e). We disagree.

During discovery the City Council admitted that in construing the boundary lines for annexation, it only reviewed areas proposed by the City Administration. The Council added, however, that this study of the City Administration included consideration and application of G.S. 160A-48(e). On cross-examination petitioners' witness proposed boundaries allegedly more consistent with topographic features, but admitted that he did not consider the revised area's qualifications for annexation nor the City's ability to provide services to the revised area.

In order to establish non-compliance with G.S. 160A-48(e), petitioners must show two things: (1) that the boundary of the annexed area does not follow topographic features, and (2) that it would have been practical for the boundary to follow such features. *Garland v. City of Asheville*, 63 N.C. App. 490, 305 S.E. 2d 66, *disc. rev. denied* 309 N.C. 632, 308 S.E. 2d 715 (1983). The testimony of petitioners' witness clearly reveals that petitioners

have failed to carry their burden of showing that the boundaries of the annexed areas could have been drawn along the topographic features proposed by petitioners.

The evidence in the record supports the findings of fact in the judgment dismissing petitioners' action, and these findings support the trial court's conclusion that the annexation ordinances are valid.

Affirmed.

Judges HEDRICK and PHILLIPS concur.