RUSSELL A. MATHESON AND WIFE, ELAINE R. MATHESON AND KAY LEE
WRIGHT v. CITY OF ASHEVILLE

No. 8928SC897

(Filed 19 March 1991)

1. **Municipal Corporations § 2.6 (NCI3d)— annexation —provision of fire protection services in annexed area—sufficiency of showing**

    Respondent city showed prima facie compliance with N.C.G.S. § 160A-47 where the annexation report showed that respondent intended to negotiate a contract with a volunteer fire department to provide fire protection services, but, failing that, respondent would provide fire protection from its existing facilities; the station serving the area to be annexed was 2.5 miles from the farthest point in the area, while the city's maximum response distance in its fire protection jurisdiction was three miles; the city intended to add an all-terrain pumping vehicle to the station in order to service the new area, thus providing it with exactly the same, if not more, protection than the rest of the city; evidence of response time showed that it was basically the same from the existing fire station to points within the city and points in the area to be annexed; the Court of Appeals has previously held that response time is only one of many factors that determines whether an annexation report complies with statutory requirements for the extension of fire protection services; and evidence that the City could use strong suction to draft water out of the water mains and could truck 3,000 gallons of water to a fire was sufficient evidence of an adequate water supply to provide fire protection.

    **Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 65.**

2. **Municipal Corporations § 2.6 (NCI3d)— annexation—provision of police protection in annexed area—sufficiency of showing**

    Respondent city's plan to increase its police force proportional to the increase in the population attributable to annexation was a sufficiently sophisticated plan for the provision of services to meet the requirements of N.C.G.S. § 160A-47(3)a.

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 65.**

3. **Municipal Corporations § 2.6 (NCI3d)— annexation—provision of solid waste collection services—no showing of discrimination between existing service and service to annexed area**

Petitioners failed to show that the city's plan to provide solid waste collection services to those individuals in the area to be annexed who lived on city or state streets and to make no provision for those who lived on private streets would provide less service to those in the annexed area than to those in the existing city limits.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 65.**

4. **Municipal Corporations § 2.6 (NCI3d)— annexation—provision of water and sewer services—provisions and timetables adequate**

A city met the requirements of N.C.G.S. § 160A-47(3)b and c where its annexation report contained adequate provisions and timetables for the extension of both water and sewer lines, and there was no substantial evidence that the current water supply was insufficient to service the annexed territory; furthermore, if residents were to find after annexation that the city did not provide water and sewer services, they could petition the court for a writ of mandamus requiring the city to provide such services.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 65.**

5. **Municipal Corporations § 2.3 (NCI3d)— annexation—boundaries not laid out according to topographical features**

Respondent city was not required to extend the boundaries of a proposed annexation area to include ridge lines where to do so would have defeated the city's compliance with the other mandatory portions of the annexation statute.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 59, 65.**

6. **Municipal Corporations § 2.1 (NCI3d) — annexation — metes and bounds description allegedly different in newspaper and ordinance**

Petitioners failed to indicate specifically how the metes and bounds description of a proposed annexation published in the Asheville newspaper varied from the metes and bounds description contained in the annexation ordinance, failed to indicate how the alleged variance prejudiced them in any manner, and failed to provide the court on appeal with a legible copy of the metes and bounds description which was published in the newspaper, rendering impossible the court's independent comparison of the two descriptions.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 66.**

7. **Municipal Corporations § 2.4 (NCI3d) — annexation — admission and exclusion of evidence — no error**

In an action to have an annexation ordinance declared null and void, the trial court did not err in (1) allowing opinion testimony of the fire chief that the city could provide adequate fire protection to the annexed area, since that opinion was based on the water carrying capacity of the equipment that would be used to respond to structure fires within the annexation area; (2) allowing the opinion evidence during cross-examination, since petitioners explicitly stated that they had no objection to the city putting on its evidence through the chief during cross-examination as long as they were allowed to cross-examine him at the conclusion of his testimony for the city; (3) allowing into evidence letters that the chief wrote in an effort to negotiate a contract with a volunteer fire department for provision of fire protection services to the annexed area, since there was sufficient evidence aside from the letters to show a good faith effort to negotiate by the city; and (4) refusing to allow a lay witness to testify as to whether there could be an adequate response by city fire trucks to a certain destination in a hypothetical situation, since there was no foundation showing that the opinion called for was rationally based on the witness's perception.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 65, 66.**

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

APPEAL by petitioners from judgment entered 17 March 1989 by *Judge Charles C. Lamm, Jr.,* in BUNCOMBE County Superior Court. Heard in the Court of Appeals 2 April 1990.

*Alley, Hyler, Killian, Kersten, Davis & Smathers, by George B. Hyler, Jr., and Robert J. Lopez, for petitioner-appellants.*

*Nesbitt & Slawter, by William F. Slawter, for respondent-appellee.*

*Assistant City Attorney Sarah Patterson Brison for respondent-appellee.*

PARKER, Judge.

Petitioners instituted this civil action to have an annexation ordinance adopted by respondent City of Asheville (herein "the City") declared null and void or, alternatively, to have the ordinance remanded for compliance with Part 3 of Article 4A of Chapter 160A of the North Carolina General Statutes.

On 26 July 1988 the Asheville City Council adopted a resolution stating its intent to annex a portion of the area known as Beaverdam Valley (herein "the Valley"). On 9 August 1988 the Council approved and made available for public inspection its annexation report for the extension of city services into the area proposed for annexation. Pursuant to N.C.G.S. § 160A-49(b), notice of public hearing was published in the *Asheville Citizen-Times* on 30 August and 8 September 1988. The public hearing was held 13 September 1988. On 18 October 1988 the ordinance of annexation was adopted by the City Council.

Petitioners instituted this action on 17 November 1988 by filing a petition in Superior Court, pursuant to N.C.G.S. § 160A-50, seeking judicial review of the ordinance. The court rendered judgment in favor of respondent and petitioners appeal.

Petitioners bring forward numerous assignments of error on appeal. To facilitate discussion of the issues raised, we have grouped petitioners' assignments of error into four arguments. Petitioners first contend that the trial court erred in finding and concluding that the report of plans for the extension of services to the annexation area met the requirements of N.C.G.S. § 160A-47. Second, petitioners assert that the trial court erred in finding and concluding that respondent used natural topographic features and streets

and roads wherever practical as required by N.C.G.S. § 160A-48(e). Third, petitioners argue that the trial court erred in finding and concluding that the annexation ordinance described the external boundaries of the annexation area by metes and bounds as required by N.C.G.S. § 160A-49(e)(1). Finally, petitioners contend that the trial court erred in its admission and exclusion of certain evidence.

I.

First, petitioners contend that the court erred in finding and concluding that the City's plan to extend major municipal services to the annexed area met the statutory requirement that such services be provided on substantially the same basis and in the same manner as the services were provided within the municipality prior to annexation. Petitioners challenge the City's plan to provide fire protection, police protection and solid waste collection services to the Valley. Petitioners also assert that the trial court erred in upholding the ordinance without concluding that the annexation report adequately provided plans and timetables for the extension of water mains and sewer lines.

For an annexation ordinance to be valid, the record must show prima facie "complete and substantial" compliance with Article 4A of N.C.G.S. § 160A as a condition precedent to the municipality's right to annex the territory. *In re Annexation Ordinance (Jacksonville)*, 255 N.C. 633, 122 S.E.2d 690 (1961); *Huntley v. Potter*, 255 N.C. 619, 122 S.E.2d 681 (1961). Once the municipality has made its prima facie showing of compliance, the burden shifts to petitioners to prove either a procedural irregularity in the annexation process materially prejudicing petitioners' rights or a failure on the part of the municipality to comply with statutory prerequisites to annexation as a matter of fact. *Huntley v. Potter*, 255 N.C. at 628, 122 S.E.2d at 686-87.

General Statute 160A, Article 4A, Part 3 provides authority for involuntary annexation by a municipality with a population of more than 5,000 persons. Section 160A-47 requires, *inter alia*, that a municipality, as a prerequisite to annexation, plan to:

> Provide for extending police protection, fire protection, solid waste collection and street maintenance services to the area to be annexed on the date of annexation *on substantially the same basis and in the same manner as such services are provided within the rest of the municipality prior to annexation.*

A contract with a rural fire department to provide fire protection shall be an acceptable method of providing fire protection. If a water distribution system is not available in the area to be annexed, the plans must call for reasonably effective fire protection services until such time as waterlines are made available in such area under existing municipal policies for the extension of waterlines. A contract with a private firm to provide solid waste collection services shall be an acceptable method of providing solid waste collection services.

N.C.G.S. § 160A-47(3)a (1987) (emphasis added). At a minimum, the City's annexation report must "provide information which is necessary to allow the public and the courts to determine whether the municipality has committed itself to provide a nondiscriminatory level of service and to allow a reviewing court to determine after the fact whether the municipality has timely provided such services." *In re Annexation Ordinance (Charlotte)*, 304 N.C. 549, 554, 284 S.E.2d 470, 474 (1981) (citations omitted), *quoted in Huyck Corp. v. Town of Wake Forest*, 86 N.C. App. 13, 22, 356 S.E.2d 599, 605 (1987), *aff'd per curiam*, 321 N.C. 589, 364 S.E.2d 139 (1988).

[1]    As to the provision of fire protection services the annexation report provided:

The City is prepared to make a good faith offer to negotiate a five-year contract with the Beaverdam Volunteer Fire Department to pay annually the amount of money that the tax rate in the district in effect [on] the date of adoption of the Resolution of Intent would generate, based on the property values on January 1 of each year in the area to be annexed.

If upon the effective date of annexation the City has not contracted with the rural fire department for protection, the City will provide fire protection on and after the effective date of annexation on the same basis and manner as provided within the rest of the City. Such protection will be provided by a response consistent with the City's fire response policy, with primary ("first due") response from City Station # 7 located near Merrimon Avenue. The City's maximum response distance in its fire protection jurisdiction is three (3) miles. The annexation area lies approximately 2.5 miles from Asheville Fire Station # 7 to the furthermost point of the Beaverdam Annexation Boundary measured using the same standard applied in the rest of the City. Reports of structure fires in that area will

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

be assigned an immediate response of two (2), [sic] engines, one (1) squad, one (1) ladder company and one District Chief. A four wheel drive pumper truck will be added to Station # 7 inventory in order to service the mountainous terrain of the Beaverdam Valley as well as other steep sections of the city. The balance of Asheville's firefighting resources would be available for intervention or support in event of a major emergency. The area would also receive fire prevention and fire investigation services from the City's Fire Department.

Petitioners first contend that the statements in the annexation report regarding the provision of fire protection services are "conclusory" and, thus, are insufficient to meet the requirements of N.C.G.S. § 160A-47(3)a. Second, petitioners assert that they presented substantial and competent evidence showing that the City's plan fails to provide reasonably effective fire protection services until such time as an adequate water supply and water distribution system is available to the area to be annexed. We note that regardless of their contentions, petitioners did not present substantial competent evidence showing that water would not be supplied to the annexed area or that fire protection would not be provided in substantially the same manner as in the rest of the City.

Petitioners argue that the City cannot provide adequate fire protection to the annexation area on account of the distance from the closest municipal fire station to the most distant area of the Valley. The City introduced uncontradicted evidence at trial, however, that at least two, and possibly three or four, areas within the existing municipal limits were the same distance from the nearest fire station, the one providing them with fire protection service, as is the furthest point of the annexed area from Fire Station #7.

Petitioners also contend that since the primary access road into the Valley is a narrow, winding, two-lane road subject to accidents and hazardous weather conditions that the City will not be able to provide adequate fire protection. The City presented evidence at trial that, although not ideal, there are secondary access roads into the Valley in case Beaverdam Road is blocked due to an accident. Additionally, the City has committed itself to purchase an all-terrain pumper truck to ensure the provision of adequate fire protection service to the mountainous regions of the City regardless of the weather. This vehicle will be located at the fire station closest to the annexed territory, thereby providing peti-

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

tioners with exactly the same, if not more, protection than the rest of the City.

Petitioners further argue that Fire Station #7 will not be able to respond to fires in the Valley within five minutes. Although there was some evidence at trial that a five-minute response time could be critical in saving lives, current Asheville City Fire Chief Ruckavina, who was admitted as an expert in fire protection, testified that the City has no standard response time, but ensures an adequate response time by limiting the jurisdiction of its primary response fire stations to an area within a three-mile radius of each fire station. The evidence presented at trial showed that on an actual run to a nursing home located within a 2.1 mile radius of Fire Station #7 the City Fire Department was on the scene within seven minutes after receiving the call. We also note that petitioners' own evidence, in the form of a videotape of an investigator making a timed run from Fire Station #7 to a remote, mountainous region of the annexation area showed that it took approximately eight minutes. The fact that equipment coming from other areas of the City will take longer to respond is the same for all outlying areas of the City.

This Court has held that the response time is only one of many factors that determines whether an annexation report complies with statutory requirements for the extension of fire protection services. *See, e.g., In re Durham Annexation Ordinance*, 66 N.C. App. 472, 481, 311 S.E.2d 898, 903-04, *disc. rev. denied*, 310 N.C. 744, 315 S.E.2d 701 (1984). In upholding the City's plan for the provision of fire protection services in *In re Durham*, this Court stated:

Petitioners' notions of equality and average service are not consistent with the practical application of [the language of the statute]. As was apparent from the evidence presented by the City, there are many variables that affect the level of fire protection afforded to different areas of a municipality: height and size of buildings, construction materials, proximity of buildings to one another and street pattern, among others. That the City of Durham has accounted for these variables is reflected in its placement of fire stations and the equipment and manpower assigned to each. Obviously, the aerial trucks and tanker will respond to fires in the downtown area in less time than to fires in outlying developments.

*Id.* at 479-80, 311 S.E.2d at 903. In our opinion, therefore, the City has shown prima facie compliance with the statute by proposing to provide fire protection services to the annexed area under the same plan as such services are provided to the pre-annexation portions of the City, and similar response times should be anticipated. *See also In re Durham Annexation Ordinance*, 69 N.C. App. 77, 88, 316 S.E.2d 649, 656, *disc. rev. denied and appeal dismissed*, 312 N.C. 493, 322 S.E.2d 553 (1984) (rejecting petitioners' argument that the annexation violated N.C.G.S. § 160A-47(3)a because response times to fires would be longer in the newly annexed areas than in the rest of the city). The fact that the annexation report did not include an average response time will not preclude a finding of compliance with the statute. *See In re Durham Annexation Ordinance*, 66 N.C. App. at 481, 311 S.E.2d at 984 (citing *In re Annexation Ordinance (Charlotte)*, 304 N.C. 549, 284 S.E.2d 470 (1981)).

Finally, petitioners assert that there is inadequate water supply or an inadequate number of fire hydrants in the Valley for the City to provide adequate fire protection. To support this argument petitioners presented evidence that the Volunteer Fire Department currently providing fire protection for the Valley does not rely on the existing water system but has equipment that will transport approximately 3,200 gallons of water to the scene of a fire. We note that if the City successfully negotiates a contract with the Volunteer Fire Department to continue providing the Valley with fire protection then this argument would be moot.

In the event that the City is unable to negotiate such a contract, however, there was sufficient evidence at trial to show that the City could provide adequate fire protection given the existing water system in the Valley. First, Chief Ruckavina testified that water pressure itself was not determinative of his Department's ability to provide fire protection because, in addition to the water pressure in the existing system, firefighters could also use strong suction to draft water out of the water mains. Second, the City's planned response to structure fires in the Valley will send a first response of 1,000 gallons of water supplemented by an additional 2,000 gallons, supplied by the vehicles responding from Stations #1 and #3, for a total of approximately 3,000 gallons of water supplied to the scene of the fire. Finally, both the Fire Chief and a District Chief gave their expert opinions that this response would adequately provide water for fire protection within areas of the

Valley where no water mains or fire hydrants are currently located until such time as these structures can be installed. This Court has previously held that, until such time as water mains and fire hydrants are installed, the provision of water by tanker to ensure adequate water flow is "reasonably effective fire protection services" under the statute. *In re Durham Annexation Ordinance*, 69 N.C. App. at 88, 316 S.E.2d at 656. For the foregoing reasons, the evidence discussed above supports the trial court's findings of fact and conclusions of law with regard to the provision of fire protection to the area of annexation.

[2] As to police protection the plan provides that:

> On and after the effective date of the annexation, the full range of police services will be provided to the area on the same basis and manner as provided within the rest of the City. These services include regular patrol division, criminal investigations, community relations/crime prevention, ordinance enforcement and traffic control.

> The 1988 population of the City of Asheville is estimated to be 65,200. The number of sworn personnel of the Asheville Police Department is currently 134, or one sworn police officer to every 486 citizens of the city (65,200/134 = 1:486). The estimated population of the Beaverdam Valley annexation area is 1,102. Applying the current ratio of police personnel services to the increase of population of the city's jurisdiction due to the Beaverdam Valley annexation, the department will increase it's [sic] patrol forces by three sworn officers (1,102/486 = 2.27 officers).

Our Supreme Court has held that the annexation report need only contain information on (i) the level of services available in the City at the time of making the report, (ii) the City's commitment to provide the same level of services to the annexed area within the statutory period, and (iii) the method for financing the extension of such services. *Cockrell v. City of Raleigh*, 306 N.C. 479, 484, 293 S.E.2d 770, 773-74 (1982) (citing *In re Annexation Ordinance (Charlotte)*, 304 N.C. at 554-55, 284 S.E.2d at 474). Petitioners assert that the mere increase in the police force proportional to the increase in the population attributable to annexation is not a sufficiently sophisticated plan for the provision of services to meet the requirements of N.C.G.S. § 160A-47(3)a. We disagree.

The City's plan states that current police protection services available in the City include regular patrol division, criminal investigations, community relations/crime prevention, ordinance enforcement and traffic control. These services are delivered by the 134 sworn police officers of the City's Police Department. The annexation report states that each of these police protection services will be available in the Valley area as of the date of annexation and that the City Police Department will hire three additional sworn officers to maintain its current ratio of one officer for every 486 citizens. This plan is sufficient to meet the requirements of N.C.G.S. § 160A-47(3)a. *See In re Annexation Ordinance (Charlotte),* 304 N.C. at 554, 284 S.E.2d at 473 (upholding a plan to provide police protection which stated only that police protection was provided 24 hours a day, with immediate response to calls, and which specifically listed particular services provided, including crime prevention, record-keeping, youth section, vice section and helicopter service); *In re Annexation Ordinance (Jacksonville),* 255 N.C. at 635, 122 S.E.2d at 692-93 (upholding an annexation report specifying only that the "routine patrol" would be extended into the annexed territory and giving the average response time for such patrol); *Thrash v. City of Asheville,* 95 N.C. App. 457, 469, 383 S.E.2d 657, 664 (1989), *disc. rev. denied on additional issues,* 326 N.C. 54, 389 S.E.2d 105-06 (1990) (holding that the city's plan to provide a full range of police services, including a regular patrol division, criminal investigation, ordinance enforcement and traffic control, to the annexed territory on substantially the same basis as to the rest of the city was sufficient to meet the requirements of N.C.G.S. § 160A-47, especially where the plan included a commitment to hire additional personnel and to acquire new equipment to provide such services), *rev'd on different ground,* 327 N.C. 251, 393 S.E.2d 842 (1990); *In re Durham Annexation Ordinance,* 69 N.C. App. at 87, 316 S.E.2d at 655-56 (holding that an annexation plan was sufficient to meet the requirements of N.C.G.S. § 160A-47(3) even though it indicated that three patrol units would be added to the Public Safety Department in order to provide sufficient law enforcement to one area to be annexed but indicated that no additional personnel would be needed to provide adequate law enforcement in another area to be annexed). Petitioners' assignments of error related to the trial court's findings and conclusion that the provisions for police protection substantially complied with the statutory prerequisites for annexation are overruled.

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

[3] As to the collection of solid wastes petitioners contend that the annexation plan is defective in that it "will deny solid waste collection services to those individuals in the newly annexed area residing on other than city or state streets." Petitioners contend that by annexation they will experience a decrease in "governmental services" because, they allege, currently all residents, even those residing on private roads, receive solid waste collection services through a private contractor. Regardless of the level of services that county residents receive through a private contractor prior to annexation, the City is only required to provide annexed territories with substantially the same level of services as are enjoyed in other areas of the City. N.C.G.S. § 160A-47(3)a. To this end the City presented uncontradicted evidence that it is the City's policy only to provide solid waste collection services to residences on streets maintained by the State or the City. A town's established policies for the provision of municipal services within pre-existing municipal limits should be taken into account when determining whether a proposed plan for extension of services to annexed territories is discriminatory. *See Greene v. Town of Valdese*, 306 N.C. 79, 86-87, 291 S.E.2d 630, 635 (1982); *In re Annexation Ordinance (Jacksonville)*, 255 N.C. at 644, 122 S.E.2d at 699. The burden was on petitioners to come forward with competent and substantial evidence either that there were no streets within the pre-existing boundaries of the City that were disqualified from solid waste collection services or that the residents of "private streets," in fact, received solid waste collection services. Petitioners failed to present any such evidence at trial; therefore, this assignment of error is overruled.

[4] Petitioners' final argument is that the trial court failed to make any findings of fact or conclusions of law as to whether the City's plan provides for the extension of water mains and sewer outfall lines in accordance with N.C.G.S. §§ 160A-47(3)b or c. Petitioners contend that "[i]t is readily apparent that any meaningful reading of the statute requiring extensions of major water trunk lines and water lines presupposes the existence of an adequate water supply to feed such lines." Petitioners assert that while respondent may have identified a plan and timetable for the water lines, no plan or associated timetables have been identified for the water supply. Although the trial judge failed to make findings of fact or conclusions of law with regard to whether the City's plan met the statutory requirements for the extension of

water and sewer lines, our review of the record on appeal reveals that the annexation report contained adequate provisions and timetables for the extension of both the water and the sewer lines.

With regard to the water supply, we note that an independent agency, the Asheville-Buncombe Water Authority (herein "ABWA"), provides water service both to Asheville and to the rest of Buncombe County. Prior to annexation there was a twelve-inch water main running down Beaverdam Valley Road and several six-inch water mains on adjacent roads in the annexation area. The ABWA supplied water to these lines. Even though the city manager admitted that ABWA had hoped to have a new reservoir built by 1986 and that bids were yet to be solicited for a reservoir at a higher elevation at the time of the hearing in 1988, petitioners failed to introduce substantial evidence showing that the existing water supply was insufficient to service the new water mains. In fact, although petitioners complain that there is inadequate water flow through the existing lines, the evidence introduced at trial showed that a pumping facility had been installed in the late 1970's or early 1980's at the end of Kimberly Avenue on Beaverdam Road, which increased both the water flow and the pressure. Without substantial evidence that the current water supply was insufficient to service the annexed territory, the City was only required to detail its plan for extending water and sewer lines in order to comply with the provisions of N.C.G.S. §§ 160A-47(3)b and c. After this area is annexed, if the residents find that the City is not providing them with water and sewer services they may petition the court for a writ of mandamus requiring the City to provide such services. See Moody v. Town of Carrboro, 301 N.C. 318, 325, 271 S.E.2d 265, 270 (1980); Wallace v. Town of Chapel Hill, 93 N.C. App. 422, 429, 378 S.E.2d 225, 229 (1989). At present, however, since the City included in the annexation report its plans and timetables for extending the water mains and the sewer lines to the Valley, we conclude that it has met the requirements of N.C.G.S. §§ 160A-47(3)b and c.

II.

[5] Petitioners' second argument is that the trial court erred in finding and concluding that the City used natural topographic features as boundaries for the area to be annexed wherever practical in accordance with N.C.G.S. § 160A-48(e). Petitioners complain that the City did not use the ridge lines to define the area to

**MATHESON v. CITY OF ASHEVILLE**

[102 N.C. App. 156 (1991)]

be annexed. The City contends that it could not use the ridge lines as a boundary for the annexation area because the higher elevations of the "valley" are so sparsely populated as to disqualify the Valley as "developed for urban purposes" if included in the proposed annexation area.

N.C.G.S. § 160A-48 describes the character of areas which may properly be annexed. Generally, such an area (i) cannot be included within the boundary of another incorporated municipality, (ii) must be adjacent to the existing boundaries of the annexing municipality, (iii) must be "developed for urban purposes" or must connect an outlying area "developed for urban purposes" with the municipality and (iv) "wherever practical" should use topographic features as boundaries. N.C.G.S. § 160A-48 (1987). In addition to topographic features, the statute explicitly permits the use of streets as boundaries. N.C.G.S. § 160A-48(e). "In order to establish non-compliance with G.S. 160A-48(e), petitioners must show two things: (1) that the boundary of the annexed area does not follow topographic features, and (2) that it would have been practical for the boundary to follow such features." *In re Durham Annexation Ordinance,* 69 N.C. App. at 88, 316 S.E.2d at 656 (citing *Garland v. City of Asheville,* 63 N.C. App. 490, 305 S.E.2d 66, *disc. rev. denied,* 309 N.C. 632, 308 S.E.2d 715 (1983) ); *see also Greene v. Town of Valdese,* 306 N.C. 79, 291 S.E.2d 630 (1982) (applying the two-part test for noncompliance with the topographic boundary condition contained in N.C.G.S. § 160A-36(d) ).

Our examination of the record reveals that petitioners presented no evidence of the practicality or reasonableness of following topographic features as boundaries for the annexation area. In fact the only evidence with regard to the use of topographic features came from two witnesses for the City. The senior city planner testified that she established the boundary for the annexed area by drawing a line around the concentrated area of the Valley that qualified as a "developed urban area." She further testified that, in her opinion, if the boundaries had been extended to the ridge lines, the area would not have qualified under the use test of N.C.G.S. § 160A-48(c)(3). The surveyor who drew the metes and bounds description testified that "[t]here were no real prominent topographic features that [the City] could use other than a few roads . . . and paved streets." The surveyor also testified that he did not follow the ridge lines because to do so would have

required moving a considerable distance away from the "urban area" as defined by the planning department.

In harmonizing the "developed for urban purposes" requirement with the use of topographic features requirement of N.C.G.S. § 160A-36 (the involuntary annexation statute for municipalities with a population of less than 5,000), our Supreme Court has stated the following rule:

> We emphasize that the provisions of subsection (d) of G.S. 160A-36 [the topographic features requirement] contain no mandatory standards or requirements for annexation. Where the boundary of the annexed area, which meets the subdivision and use test of G.S. 160A-36(b) and (c), can be established along ridge lines, streams, and creeks without defeating the area's compliance with the other portions of G.S. 160A-36 the boundary must follow such features. Where, however, to follow natural topographic features would convert an area which would otherwise meet the statutory tests of G.S. 160A-36(b) and (c) into an area that no longer satisfies those requirements, the drawing of boundaries along topographic features is no longer "practical," i.e., not "possible of reasonable performance" within the meaning of the language of the statute.

*Greene v. Town of Valdese*, 306 N.C. at 85, 291 S.E.2d at 634. The provisions of N.C.G.S. §§ 160A-48(b), (c) and (e) are virtually identical to their counterparts in N.C.G.S. §§ 160A-36(b), (c) and (d). Therefore, under the rule enunciated in *Greene*, we hold that the City was not required to extend the boundaries of the proposed annexation area to include the ridge lines where to do so would have defeated the City's compliance with the other mandatory portions of the annexation statute.

### III.

[6] Petitioners next argue that the trial court erred in finding and concluding that the annexation ordinance described the external boundaries of the annexation area by metes and bounds as required by N.C.G.S. § 160A-49(e)(1). Petitioners contend that a comparison of the metes and bounds description of the area to be annexed contained in the published notice of public hearing differs from the metes and bounds description of the area of annexation contained in the annexation ordinance, and that such discrepan-

MATHESON v. CITY OF ASHEVILLE

[102 N.C. App. 156 (1991)]

cy is a fatal defect in the annexation procedure. The City argues that such discrepancies were pointed out to the trial court and the court, nonetheless, concluded that the ordinance contained a metes and bounds description in compliance with the annexation statute. "[S]ubstantial compliance is all that is required in meeting the boundary requirements set forth in the [annexation] statutes." *In re Annexation Ordinance (Asheville)*, 62 N.C. App. 588, 598, 303 S.E.2d 380, 385, *disc. rev. denied and appeal dismissed*, 309 N.C. 820, 310 S.E.2d 351 (1983).

Petitioners have failed to indicate specifically how the metes and bounds description published in the *Asheville Citizen-Times* varied from the metes and bounds description contained in the annexation ordinance and, more importantly, have failed to indicate that this alleged variance prejudiced them in any manner. *See In re Annexation Ordinance (Winston-Salem)*, 303 N.C. 220, 233, 278 S.E.2d 224, 232 (1981). Petitioners also have failed to provide the Court with a legible copy of the metes and bounds description that was published in the *Asheville Citizen-Times*, rendering impossible our independent comparison of the two descriptions. It is the duty of the appellant to see that the record is properly prepared and transmitted. *Mooneyham v. Mooneyham*, 249 N.C. 641, 107 S.E.2d 66 (1959); *Industrotech Constructors v. Duke University*, 67 N.C. App. 741, 314 S.E.2d 272 (1984). Moreover, current Rule 9(a)(1)e of the North Carolina Rules of Appellate Procedure, which states that the record must contain so much of the evidence as is necessary for an understanding of all errors assigned, presupposes that the evidence transmitted will be sufficient in substance, form and appearance to allow the Court to understand the assignments of error. *See Fortis Corp. v. Northeast Forest Products*, 68 N.C. App. 752, 315 S.E.2d 537 (1984) (dismissing the appeal for failure to comply with the appellate procedure rule requiring transmittal of all evidence necessary for understanding of all errors assigned). Based on its review of the evidence, the trial court found as fact and concluded as a matter of law that the description of the territory to be annexed met the requirements of N.C.G.S. § 160A-49(e)(1). The metes and bounds description contained in the annexation ordinance supports this finding and conclusion. Since petitioners failed to transmit to this Court any evidence showing that the trial court erred in this conclusion, the assignment of error is overruled.

## IV.

[7] Petitioners next contend that the trial court erred in the admission and exclusion of certain evidence at trial. Petitioners first object to the admission of the opinion testimony of Chief Ruckavina that the City could provide adequate fire protection to the portion of the annexation area not presently served by ABWA water mains. This objection is based on petitioners' assertion that no evidence supports this opinion. Petitioners also object to the trial court allowing Chief Ruckavina to testify during cross-examination as an expert in the field of fire protection. Petitioners do not object to the court's qualification of Chief Ruckavina as an expert, only to the fact that he was qualified during cross-examination.

As to petitioners' contention that the Chief's opinion concerning the provision of fire protection to the annexation area was not supported by any evidence, an expert witness's opinion is admissible if based upon facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject . . . ." N.C.G.S. § 8C-1, Rule 703 (1988). At trial Chief Ruckavina testified that he formulated his plan for providing fire protection services to the annexation area based on the number of existing fire hydrants and the diameter of the water mains. He also testified that in the field of fire protection services this was an acceptable method of calculating water flow available for fighting fires. Chief Ruckavina's opinion, that fire protection substantially similar to that provided within the pre-annexation limits of the City could be provided to the annexation areas not yet served by fire hydrants and water mains, was based on the water carrying capacity of the equipment that would be used to respond to structure fires within the annexation area. These empirical considerations were sufficient bases for his expert opinion.

As to the admission of such opinions during cross-examination, the North Carolina Rules of Evidence provide that the court shall exercise reasonable control over the interrogation of witnesses and the presentation of evidence "so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." N.C.G.S. § 8C-1, Rule 611(a) (1988). The transcript reveals that the trial court allowed consolidation of the Fire Chief's testimony so that he would not have to be recalled. Petitioners have failed to demonstrate that the trial

**MATHESON v. CITY OF ASHEVILLE**

[102 N.C. App. 156 (1991)]

court abused its discretion in allowing the Chief to testify as an expert during cross-examination. The trial transcript also reveals that, although counsel for petitioner objected when Chief Ruckavina was first tendered as an expert, petitioners later explicitly stated that they had no objection to the City putting on its evidence through Chief Ruckavina during cross-examination as long as petitioners were allowed to cross-examine him at the conclusion of his testimony for the City. Having waived their objection at trial, petitioners will not be permitted to raise it on appeal.

Next, petitioners argue that the trial court erred in allowing into evidence two letters from Chief Ruckavina to the former Fire Chief of the Beaverdam Volunteer Fire Department, Bill Redmond. Petitioners contend that these letters were irrelevant to the issue of whether the City had made a good faith effort to negotiate a contract with the Volunteer Fire Department for the provision of fire protection services to the Valley because Mr. Redmond was not the Fire Chief at the time the letters were sent. Petitioners also assert that since the trial court's finding of fact with regard to the City's negotiations with the Beaverdam Volunteer Fire Department was based, at least in part, on this "impermissible evidence," the finding of fact was deficient. This argument is without merit. Regardless of whether these letters were relevant to the issue of the City's good faith negotiations, subsequent to the admission of the letters, Chief Ruckavina and District Chief Griffin testified that they made an offer to the Volunteer Fire Department's Board of Trustees to contract with the Volunteer Fire Department for fire protection for the annexation area. This testimony was not contradicted by petitioners' evidence; therefore, sufficient evidence existed, aside from the letters, to support the trial court's findings of fact and conclusion of law and petitioners could not have suffered prejudice from the admission of the letters.

Finally, petitioners contend that the trial court erred in refusing to allow Mr. Wayne Adams, the administrator at the Brentwood Nursing Home, to testify as to whether there could be an adequate response to Brentwood from Fire Station #7 in the event that Beaverdam Road was blocked. Petitioners readily concede that Adams was not qualified to give expert testimony on this issue; however, petitioners contend that such testimony was admissible as lay witness testimony under N.C.G.S. § 8C-1, Rule 701. The rule states:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C.G.S. § 8C-1, Rule 701 (1988). First, we note that the question was targeted to a hypothetical situation, *viz.*, in the event that Beaverdam Road was blocked would Station #7 be able to provide an adequate response to a fire at the Brentwood Nursing Home? The opinion of a lay witness must be rationally based on the witness's perception and must be helpful to the trier of fact. In the present case petitioners failed to present evidence that Mr. Adams had ever witnessed the City Fire Department's response to a fire at the Brentwood Nursing Home under the conditions posited in the hypothetical question. As there was no foundation showing that the opinion called for was rationally based on the witness's perception, the opinion was inadmissible.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

Chief Judge HEDRICK and Judge ORR concur.